MAHALIA E. COLBY, et als., In Equity

*vs*

LEONARD N. RICHARDS, et al.

Aroostook.    Opinion October 13, 1919.

*Rule as to evidence necessary to sustain a charge of forgery or other serious crime where the same is set up in a civil action.*

Bill in equity in which the plaintiffs ask that a certain deed purporting to bear their signatures as grantors be declared void as to them on the grounds of forgery.   The sitting Justice sustained the bill and the defendants appealed.

*Held:*

1.   When a serious crime like forgery is set up in a civil action, the evidence to sustain the charge must be full, clear and convincing.

2.   In view of all the evidence and the circumstances, and considering the gravity of the charge made against a deceased brother, it is the opinion of the court that the finding is so manifestly wrong that it cannot be allowed to stand.

Bill in equity to cancel deed alleging that certain signatures to said deed were forgeries.  From ruling of sitting Justice sustaining bill, defendants entered appeal.   Judgment in accordance with opinion.

Case stated in opinion.

*Shaw & Thornton, A. B. Donworth,* for plaintiff.

*Powers & Guild,* for defendant.

SITTING:   CORNISH, C. J., HANSON, DUNN, WILSON, DEASY, JJ.

CORNISH, C. J.,   This is a bill in equity in which the plaintiffs ask that a certain deed, dated March 31, 1896, and purporting to bear their signatures, as grantors, be declared void as to them on the ground of forgery.   The sitting Justice sustained the bill and the defendants appealed.

The situation was this.   One Joseph Cyr, the name being Anglicized as Sears, was the owner of the west half of lot 146 in Limestone, containing about one hundred and twenty-two acres.

He died intestate on March 24, 1887, leaving a wife and ten children who were occupying this place as their homestead at the time of his decease.

On March 31, 1896, the widow, Esther Cyr, conveyed all her right, title and interest in the place to Leonard N. Richards, one of these defendants, the deed being recorded on July 22, 1896.

On the same date, March 31, 1896, a quit claim deed was drafted with George E. Cyr (alias Sears) of Limestone, Melissa Cyr (alias Sears) of Newton, Massachusetts, and Mahalia Colby of Newtonville, Massachusetts, three of the children and heirs at law of Joseph Cyr, as grantors of one-tenth interest each in the same premises, and Leonard N. Richards as grantee. The consideration was stated to be twenty-five dollars.' This deed purports to be signed by George E. Sears, Leaner Sears his wife, by Melissa V. Sears, by Mahalia E. Colby and by Charles L. Colby her husband. It was recorded on July 22, 1896, the same date on which the widow's deed was recorded. At about the same time Richards also acquired the interests of certain other heirs to the same property.

This deed of March 31, 1896, is the object of attack in these proceedings so far as the signatures of all the grantors are concerned except that of George E. Sears.

The plaintiffs' case therefore rests upon the direct charge of forgery of their names by their brother George E. Sears, and this was the single issue before the sitting Justice. His finding sustained the charge. While granting to his decision the full force of the verdict of a jury and admitting that it should not be reversed unless considered manifestly wrong, we are constrained, after thorough and careful consideration of all the facts and circumstances of the case and a critical examination of the signatures alleged to have been forged, to hold that the decree should not be sustained.

It is apparent from the memorandum of decision that in the mind of the sitting Justice the case was exceedingly close. He says: "The case is so nearly balanced in the weight of testimony that it turns upon a preponderance of the testimony." If by this is meant a slightly greater weight of testimony on the part of the plaintiffs than on the part of the defendants, the burden which the law sets up in this class of cases was not insisted upon, and certainly it was not met.

It is an established and salutary rule that when a serious crime like forgery is set up in a civil action, the evidence to sustain the charge

must be full, clear and convincing. The reason is apparent and has been stated by this court as follows: ''To create a preponderance of the evidence, the evidence must be sufficient to overcome the opposing presumptions as well as the opposing evidence. Presumptions like probabilities are of different degrees of strength. To overcome a strong presumption requires more evidence than to overcome a weak one. To fasten upon a man a very heinous or repulsive act requires stronger' proof than to fasten upon him an indifferent act, or one in accordance with his own inclinations." *Decker* v. *Ins. Co.,* 66 Maine, 406. The rule was restated and applied in the recent case of *Palmer* v. *Blanchard,* 113 Maine, 380, where forgery was set up by the defense in an action upon promissory notes, and the verdict of a jury in favor of the defendant was set aside.

The application of the same rule here finds the case falling far short of that full, clear and convincing evidence which is required. To sustain the charge we have first the deposition of the plaintiffs, Melissa V. Sears, taken in Los Angeles, California, on January 26, 1917. She was shown not the original deed purporting to bear her signature, but merely a copy, and she testified that she had never conveyed her interest in this land by this deed or by any other. This was a matter merely of memory on the part of an interested party, testifying twenty-one years after the date of the transaction in question. In the second place we have the testimony of Mahalia E. Colby, who when shown the original deed denied her signature and gave as the only reason therefor, ''Because there is a period after Mahalia, which I never wrote in my life." She also denied the signature of her husband Charles L. Colby, on the ground that ''it was too good writing for my husband, he was a very poor writer." Mr. Colby did not testify and therefore made no denial of signature, but the specimens of his signature admitted as genuine were strikingly similar to that on the deed, and showed him to be a very good penman.

The third witness was Leaner Sears Bureby, the former wife of George E. Sears, who denied her signature, giving the same reason as Mrs. Colby, that there was a period between ''Leaner'' and ''Sears'', which she never used because she ''didn't know where to put them.''

The plaintiffs further introduced the testimony of a witness who many years before was familiar with the handwriting of Melissa V. Sears, and who testified that in his judgment the signature was not genuine. But on cross examination the reasons given for his opinion were quite demolished by comparison with the admitted standards.

This in substance is the plaintiff's case. It consists of the practically uncorroborated statements of the interested parties, based upon a mere recollection of an event more than twenty years old. Recorded muniments of title should be jealously guarded against such attacks.

On the other hand it appears from the attorney who drew both the conveyance of the mother and that of the children that the mother and the son George went to his office together and from them he obtained the information as to names and residences from which to prepare the deed in question; that he wrote it all himself, and George signed and acknowledged it in his presence, that he witnessed the signature of George, that then the deed was taken by George presumably to obtain the other signatures, and later it was returned to his office; that he then had it recorded, and it has remained in his office from that time until after this bill in equity was brought, having in the meantime been misplaced.

George Sears, against whom this charge of forgery is made, is dead. The date of his death does not appear. The mother, Esther Cyr, is also dead. She lived until December, 1912, and at the time of her decease was residing with Mrs. Colby. No claim was made by these plaintiffs until many years after the death of both the mother and brother, when it was impossible for the brother to free himself from this heinous charge of felony, and for the mother who was with him when the deed was written to state the facts within her knowledge.

Moreover these plaintiffs knew the time when the family left the premises and that since that time they have been occupied by bona fide purchasers. Mr. Richards occupied them fifteen years, until 1911, and then conveyed them to one Embleton; and Embleton to James R. Wright in 1913, and the latter to Margaret R. Wright in 1917. As far back as January 21, 1908, Melissa wrote to her mother asking who was living on the old place where her father was buried and whether the grave was looked after. It seems irreconcilable with their present claim that during all these years these plaintiffs have never asserted their title. They have paid no taxes, and have exercised no dominion. Their conduct is consistent with non-ownership, not with ownership, and their acts negative their words. The presumption or probability that the plaintiffs signed this deed and forgot it is much stronger than the presumption or probability that a forgery was committed.

The defendants further introduce the testimony of one Hingston, an expert in handwriting, who has made it his exclusive business for eighteen years and for the past ten years has been in the employment of the United States Government solely in this line of work.    His opinion is unhesitatingly given that the signatures are genuine, and the detailed reasons with which he fortifies his opinion are most convincing.

To this should be added a visual inspection of the signatures by the court and their comparison with the admitted standards, the result of which fails to sustain the plaintiff's allegations.

In view then of all the evidence and circumstances, giving to each the weight to which it is fairly entitled, and considering the seriousness of the charge which these sisters see fit to make against their deceased brother, considering too the improbability of his having the wicked design to defraud his sisters by such a criminal act, of his possessing the skill to effectuate it, and the boldness to face the charge which was likely to confront him at any time during the remainder of his life, it is the opinion of the court that the finding is so manifestly wrong that it cannot be allowed to stand.    The bill should be dismissed with a single bill of costs for defendants.

The entry therefore must be,

*Appeal sustained with costs.*
*Decree in accordance with opinion.*